UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEITH POWERS,                          )
                                       )
      Plaintiff,               )
                                       )
      v.                       )        Case No. 3:12-CV-461 JD
                                       )
USF HOLLAND INC. and YRC INC.,         )
                                       )
      Defendants.              )

## OPINION AND ORDER

This case arises out of the attempts of Plaintiff Keith Powers to return to his job as a truck

driver at USF Holland, Inc. ("Holland").[1] He has been on medical leave since August 29, 2004.

Mr. Powers previously brought a different lawsuit against Holland, which alleged disability

discrimination and was disposed of on summary judgment by Judge Van Bokkelen. *Powers v.*

*USF Holland, Inc.*, No. 3:07-CV-246, 2010 WL 558557 (N.D. Ind. Feb. 9, 2010), as modified on

reconsideration, 2010 WL 1994833 (May 13, 2010). The Seventh Circuit affirmed the grant of

summary judgment. 667 F.3d 815 (7th Cir. 2011) (hereinafter "*Powers*").

Beginning in 2010 (while the first case was still pending), Mr. Powers attempted to return

to work at Holland again. The new attempt was not successful. In response, Mr. Powers filed this

lawsuit, which alleges claims of *per se* discrimination, disability discrimination, failure to

accommodate, and retaliation, all based on the later attempt to return.

Now before the Court is a motion for summary judgment filed by the Defendants,

seeking judgment on each of Mr. Powers's claims. [DE 32.] The motion is fully briefed and ripe

---

[1] Defendant YRC Inc. is the parent company of Holland. The two companies are collectively referred to as "Defendants."

for decision. For the reasons stated below, Defendants' Motion for Summary Judgment is

**GRANTED IN PART** and **DENIED IN PART**. [DE 32.]

## I. Facts

Holland is a freight transportation company, for which Mr. Powers began working in

1999. There are two types of drivers at Holland's South Bend facility: Combination City

Drivers/Dock Workers ("City" drivers) and Linehaul Drivers ("Road" drivers). City drivers

make short hauls and remain within a 100-mile radius of the terminal; they also perform dock

work, which includes loading and removing freight from trailers with a forklift. Road drivers

make longer hauls and travel outside of the 100-mile radius; they may also perform dock work,

but typically do so less often than City drivers.

Mr. Powers was a Road driver when he suffered an injury to his back in 2002. He was off

work and received workers' compensation benefits for approximately five months. He returned

to work in June 2002. In March 2004, Mr. Powers requested to switch from being a Road driver

to a City driver. Due to the collective bargaining agreement with the drivers, the switch required

the completion of a transfer form (called a Board Switching Request Form). Mr. Powers

submitted the form in March 2004 and was transferred to the City driver board.

Mr. Powers began a medical leave of absence in August 2004. In December 2005, he

sought to return to work. That attempt was not successful. Mr. Powers attempted to return to

work again in May 2007. The second attempt was also not successful and was the subject of Mr.

Powers's first lawsuit against Holland. As noted above, that lawsuit was disposed of on summary

judgment and the Seventh Circuit affirmed.

In October 2010—after Judge Van Bokkelen had granted summary judgment in the first

lawsuit but while the appeal was pending—Mr. Powers contacted the South Bend terminal, again

requesting to return to work. In response, Holland sent Mr. Powers a letter, dated October 11, 2011. [DE 35-19 at 11.] The letter stated, in part, that "in order to begin the process we must first receive a release from your treating physician indicating you are able to return and what, if any, restrictions you may currently have." [*Id.*] The letter enclosed an accommodation form to be completed if the doctor determined that Mr. Powers did have current restrictions. The October 11 letter was returned as undeliverable; Holland re-sent the letter to Mr. Powers's then-current address on November 5, 2010. [DE 35-19 at 12.]

The parties agree that on December 17, 2010, Mr. Powers faxed Holland two documents, apparently in response to the November 5 mailing: (1) a report of a Functional Capacity Examination completed on December 9, 2010, by Robert Lee, PT and (2) a Commercial Driver Fitness Determination completed on January 28, 2010, by Dr. Dennis Dalphond (Mr. Powers's treating physician). [DE 39-11.]  Holland sent Mr. Powers a follow-up communication on December 23, 2010. [DE 35-19 at 17.] The December 23 letter stated that the information faxed by Mr. Powers was insufficient and requested a release from his treating physician indicating whether he has any current restrictions and, if he did have restrictions, an accommodation form. [*Id.*] The letter also indicated that he may be asked to undergo a "Fitness for Duty" evaluation by the company if his physician indicates he would be able to perform the essential functions of his position with or without an accommodation. [*Id.*]

On January 10, 2011, counsel for Mr. Powers emailed counsel for Holland requesting the job description for Road drivers. [DE 35-20 at 5.] (Previous correspondence had included the job description for City drivers, which was Mr. Powers's last job at Holland.) On January 20, 2011, counsel for Holland provided the requested Road driver job description and reminded counsel for

Mr. Powers of the need to submit a request if Mr. Powers wanted to switch back to the Road board. [DE 35-20 at 6–8.]

On February 21, 2011, Mr. Powers faxed a letter to Holland stating "My doctor and I have filled out Holland's paper work that you have requested." [DE 35-20 at 16–17.]   However, pages from the fax were missing and counsel for Holland followed-up with counsel for Mr. Powers. [DE 35-20 at 13.] On February 28, 2011, counsel for Mr. Powers submitted the full fax (containing an ADA Accommodation Request Medical Inquiry Form for Healthcare Provider and an Accommodation Request Form), as well as a Board Switching Form requesting to transfer to a Road driver position. [DE 35-20 at 18–26.] The Medical Inquiry Form stated that Mr. Powers suffered from Persistent Lumbar Radiculitis, which impacted his ability to sleep, walk, lift, bend, and perform manual tasks. [DE 35-20 at 21.] It also stated: "As long as restrictions are followed, Mr. Powers can perform all duties" and "If Mr. Powers stays within the restrictions that I have him under – his impairment should not be a factor to perform his duties." [*Id.*] The Medical Inquiry Form did not explicitly state the restrictions put in place by Dr. Dalphond. The ADA Accommodation Form requested the following accommodations: "11 hours driving truck/day. Limited to 8 hours dock work. 4 hours lifting and bending. 6 hours fork lift, 4 hours pallet jack, 14 deck plates lifted (55 gal. barrels by hand or cart) 4 hours dolly cart per day. Plus truck needs to be equipped with air ride suspension cab and seat." [DE 35-20 at 25.]

Holland states that it believed there to be inconsistencies in the information provided by Mr. Powers. Accordingly, counsel for Holland called counsel for Mr. Powers on March 10, 2011, and left a voicemail. [DE 35-20 at 3, ¶ 11.] Counsel for Holland followed-up with an email on March 11, 2011, which stated in part the desire to "discuss with you the additional information that Mr. Powers has provided." [*Id.* at 27.] Counsel for Holland has affirmed that she received no

response to either the March 10 voicemail or March 11 email [DE 35-20 at 4, ¶ 13] which Mr. Powers does not dispute.

During roughly the same time period, Mr. Powers claims to have called either Stacey VandeVusse or Kurt Kopczynski, both of whom are Holland employees. He testified at deposition that the phone call occurred either one or two months after he submitted the last of the documentation and the board switching form. [DE 39-1 at 29, 31.] Mr. Powers testified that he could not remember the words exactly, but that whoever he spoke to said "they would have to get back to me on that, they're not sure what's up, they were going to check and see what was going on." [*Id.* at 29] Mr. Powers did not recall any later communication with either Ms. VandeVusse or Mr. Kopczynski. [*Id.* at 31.] For their part, both Ms. VandeVusse and Mr. Kopczynski testified at deposition that they did not have any contact with Mr. Powers during the time he alleges his phone call was made. [DE 39-3 at 16, 18; DE 39-4 at 3.]

The parties agree that Mr. Powers has not returned to work at Holland, either as a City or Road driver. In October 2011, Mr. Powers filed an EEOC Charge of Discrimination. He received a right to sue letter in May 2012 and filed this lawsuit in August 2012.

## II.  Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such

material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in his favor. *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. Discussion

**A.    Mr. Powers's Complaint Does Not Raise Any Issues Barred by *Res Judicata***

As an initial matter, Defendants argue that there is a preclusive effect by the Seventh Circuit's earlier *Powers* decision "[t]o the extent Powers relies on any facts prior to the May 7, 2007 filing of his first lawsuit against Holland." [DE 34 at 4.] They argue that any claims based on those facts were either actually raised or could have been raised in the first lawsuit and therefore may not be asserted in this lawsuit under the doctrine of *res judicata*.

"Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). In order to establish *res*

6

judicata or claim preclusion, the party asserting preclusion must show: "(1) identity of the claim, (2) identity of [the] parties, which includes those in 'privity' with the original parties, and (3) a final judgment on the merits." *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). "In order to decide whether the two cases involve the same claim, [the Court asks] whether they arise out of the same transaction. If they did, whether or not they were actually raised in the earlier lawsuit, they may not be asserted in the second or subsequent proceeding." *Id.* However, "claim preclusion generally does not bar a subsequent lawsuit for issues that arise after the operative complaint is filed." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 652 (7th Cir. 2011).

While Defendants cite these general standards of claim preclusion, they do not seem to argue that this suit actually arises from the same transaction as Mr. Powers's earlier suit. Instead, they argue that "any action by Holland prior to May 7, 2007 cannot be used to bootstrap Powers' current allegations of discrimination." [DE 34 at 4.] But the Defendants don't cite any law for the proposition that the plaintiff is barred from relying on facts at issue in an earlier suit to infer the discriminatory intent of later adverse actions. And the Court is not aware of such authority. Accordingly, that argument is waived. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citing *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003) ("The failure to cite cases in support of an argument waives the issue . . .")).

To the extent that the Defendants are arguing this suit arises out of the same transaction as the earlier suit, the Court does not read Mr. Powers's complaint to challenge any of the adverse actions of Holland that occurred prior to his 2010 attempt to return to work at Holland. [*See* DE 1 at ¶ 31 ("Powers complains of YRC-Holland not allowing him to return to work during 2010 because of his record or impairment and/or YRC-Holland perceived Powers to be

disabled.").] Mr. Powers confirms the scope of his current lawsuit in his response to the summary judgment motion. [DE 38 at 10 ("The Plaintiff's Complaint alleges that Holland violated the ADAAA by abandoning the interactive process to provide Powers accommodated work, failing to return Powers to work as a LH driver, and awarding the open and available positions to non-disabled employees, hiring 13 others since receiving Powers' accommodation request on February 28, 2011. Plaintiff[] also alleges Holland retaliated against him by failing to engage in an interactive process to consider Powers' accommodation request because of his engagement in protected activities.").] Each of these alleged events arose after the filing of the complaint at issue in the first *Powers* decision; accordingly, the Court finds that the claims in this case do not arise from the "same transaction" as Mr. Powers's earlier lawsuit and thus are not barred by *res judicata*.

In a footnote, Defendants raise the separate question of whether Mr. Powers is barred by the doctrine of collateral estoppel or issue preclusion from relying on any facts that occurred before May 7, 2007. [DE 34 at 4 n.1.] In support of that argument, Defendants assert that the Seventh Circuit's *Powers* decision concluded that no "discrimination occurred prior to that date." [*Id.*] However, that question is not properly before the Court. *See* N.D. Ind. L.R. 56-1(e) ("Any dispute regarding the admissibility of evidence should be addressed in a separate motion in accordance with L.R. 7-1."). Moreover, the Defendants fail to identify the specific facts the Plaintiff should be barred from relying on, nor do they analyze how such facts were "essential to the final judgment" in the initial *Powers* decision. *See Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (stating one element of collateral estoppel is that "the determination of the issue must have been essential to the final judgment" in the earlier litigation.). Accordingly,

the Court declines to address, at this time, the potential preclusive effects on the issues addressed in the *Powers* decision.[2]

**B.     ADA Claims**

With that preliminary issue addressed, the Court turns to Mr. Powers's claims under the ADA. Mr. Powers asserts four such claims: *per se* discrimination, disability discrimination, failure to accommodate, and retaliation. Each will be addressed, in turn, below. However, Defendants raise one issue which affects the analysis of several of the claims: whether Mr. Powers is disabled. Because that question is a threshold one for many of the ADA claims at issue, the Court addresses it first.

**1.     Qualified Individual with a Disability**

In order to benefit from the ADA, Mr. Powers must establish that he is disabled. A plaintiff may show that he is disabled by showing that any of the following three factors are present: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. Mr. Powers argues only that subsection A applies. [DE 38 at 19 n.3.]

Defendants argue that Mr. Powers is not disabled. Specifically, they argue: "As the Seventh Circuit noted in affirming summary judgment against Powers in 2011, Powers was not an individual with a disability. Nothing has changed since." [DE 34 at 5.] But something has changed: the standards for determining disability under the ADA. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 2008 Stat. 3406 (2008) (hereinafter "ADAAA").

---

[2] The Court's ruling on this motion would be the same regardless of whether or not it considered any pre-May 7, 2007 facts.

For claims that arose prior to January 1, 2009—the effective date of the ADAAA—courts in this Circuit applied the standards that the Seventh Circuit summarized in its 2011 *Powers* decision. Under those standards, Mr. Powers needed to establish that his alleged disability "significantly restricted" his ability to work in "either a class of jobs or a broad range of jobs." *Powers*, 667 F.3d at 820.

The ADAAA significantly liberalized the standards for determining disability—and is applicable in this case since Mr. Powers challenges actions taken after January 1, 2009. Other courts have summarized the substantive differences that Congress implemented in the ADAAA:

> The ADAAA provides more generous coverage than the ADA by providing that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the Act.]" 42 U.S.C. § 10102(4)(A). The associated regulations instruct courts to be liberal in determining whether a plaintiff is substantially limited: "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

*Newman v. Gagan LLC*, 939 F. Supp. 2d 883, 897 (N.D. Ind. 2013) (quoting *Graham v. St. John's United Methodist Church*, No. 12-CV-297-MJR, 2012 WL 5298156, at *3 (S.D. Ill. Oct. 25, 2012) (alterations in original)).

In passing the ADAAA, Congress explicitly found that "the [then-]current Equal Employment Opportunity Commission ADA regulations defining the term 'substantially limits' as 'significantly restricted' are inconsistent with congressional intent." ADAAA at § 2(a)(8). The ADAAA also made clear that "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied

with their obligations and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* at § 2(b).

Mr. Powers contends that he has submitted sufficient proof of a disability to allow his case to proceed to a jury. Among that evidence is a Medical Inquiry Form completed by Mr. Powers's doctor that indicates Mr. Powers suffers from the physical impairment of "persistent lumbar radiculitis" which substantially impairs his ability to sleep, walk, lift, bend, and perform manual tasks, at least when his back is aggravated. [DE 39-16 at 2.] Each of those tasks is defined as a "major life activity" under the ADAAA. 42 U.S.C. § 12102(2)(A).

Defendants point to other evidence in the record, including that Mr. Powers has been working throughout the duration of this lawsuit for two farms and a trucking company, working at times in excess of 80 hours per week. [DE 34 at 6.] This work, they argue (without citation to any case authority), "guts his contention that he is physically limited to the extent of disability under the ADAAA." [*Id.*] In their reply, Defendants accuse Mr. Powers of failing to cite any evidence in the record to support his contentions of the limiting effects of his condition. [DE 42 at 3.]

But Mr. Powers does cite to at least the Medical Inquiry Form, in which his doctor indicates that he has limitations as a result of his medical condition. [DE 38 at 5–6.] And that he works in other jobs is not dispositive of the question of whether his impairments render him disabled, especially under the substantially more liberal standards of the ADAAA. *See Kravtsov v. Town of Greenburgh*, No. 10-CV-3142, 2012 WL 2719663, at *11 (S.D.N.Y. July 9, 2012) (finding disputed facts precluded summary judgment on issue of disability, even where plaintiff testified he was able to work).

In light of the conflicting evidence and the revised statutory rules, the Court finds there is a genuine issue of material fact as to whether Mr. Powers is a qualified individual with a disability. The record on whether Mr. Powers is disabled is admittedly light. But the Court determines that a reasonable jury could find—the Seventh Circuit's earlier decision under a different standard notwithstanding—that Mr. Powers is disabled under the less-demanding standard of the ADAAA. *See, e.g., Ceska v. City of Chi.*, No. 13 C 6403, 2015 WL 468767, at *3 (N.D. Ill. Feb. 3, 2015) (finding lifting and sleep limitations sufficient evidence of disability to survive summary judgment, but granting summary judgment on other grounds); *Newell v. Alden Vill. Health Facility for Children & Young Adults*, No. 12 C 7185, 2014 WL 6757928, at *4 (N.D. Ill. Dec. 1, 2014) (finding wrist injury which impacted lifting and personal care sufficient to show disability at summary judgment stage).

However, whether or not Mr. Powers is a qualified individual with a disability is only one element of the claims at issue. Accordingly, the Court will address the remaining disputes regarding the ADA claims to determine whether the claims survive summary judgment.

### 2. *Per Se* Discrimination

Mr. Powers first alleges that the Defendants engaged in acts that constitute *per se* discrimination by applying a "100% healed policy." In other words, Mr. Powers claims that Holland employs an unwritten policy that its drivers are not allowed to return to work following a medical absence unless and until they are fully released to work without restrictions. [DE 38 at 3–4.] If such a policy does exist, it would constitute a *per se* violation of the ADA, since the policy would preclude individual assessments of accommodation. *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 698–99 (7th Cir. 1998).

Defendants argue that Mr. Powers has not offered any evidence that Holland applied a 100% healed policy in 2010 and 2011, the time at issue in this lawsuit. [DE 42 at 7–8.]

Mr. Powers offers, in essence, two types of evidence in support of the claim. First, he offers evidence that Holland utilized a 100% healed policy during the time period at issue in his first lawsuit [*see* DE 39-5 at 27 (2005 email from Mr. Kopczynski stating Mr. Powers could not be considered for work "until his doctor issued a release with no restrictions"); DE 39-5 at 33 (2007 handwritten notes from Mr. Kopczynski stating Mr. Powers would not be considered for transfer to long haul driver "until he had no restrictions"); DE 39-23 at 2 (2009 affidavit of Guy Trzaskowski: "Kurt also told me that if I wanted to return to work as a road driver, I would need to be fully released with no medical restrictions.")] and notes that the Seventh Circuit found in *Powers* (in a footnote and with respect to the earlier lawsuit) that he had provided sufficient evidence of a 100% healed policy to survive summary judgment.[3] Second, he states that the Defendants have, in this litigation, admitted that their ADA policies are the same as they were in the earlier litigation.

Of course, whether or not Holland utilized a 100% healed policy prior to 2010 is a different factual question than whether they did so in 2010 and 2011. As noted previously, Mr. Powers explicitly challenges the Defendants' actions during that latter time period (as he must to avoid *res judicata*). Since the previous lawsuit focused on times prior to 2010, Mr. Powers must do more than simply rest on the evidence presented in his previous lawsuit and must provide at least sufficient evidence to allow a reasonable jury to find that Holland continued to impose a 100% healed policy during the time period at issue in this lawsuit.

---

[3] The *per se* discrimination claim still failed, however, because the Seventh Circuit agreed with Judge Van Bokkelen that Mr. Powers had provided insufficient evidence of disability under the more exacting standard which was utilized prior to the passage of the ADAAA.

In order to bridge the earlier evidence to the time period relevant to this lawsuit, Mr. Powers offers citations to two depositions. Because the cited portions are critical to the analysis of whether Mr. Powers has sustained his burden in responding to the motion for summary judgment, the Court quotes them in full.

First, Mr. Powers cited the deposition of Stacy VandeVusse for the proposition that "Holland's policy for reporting a disability today does not differ [from the policy in place during the earlier litigation]." [DE 38 at 3.] The cited portion of the deposition states:

> Q.   And what I'm -- what I'm looking for is the -- what was produced in this case was documents from essentially the handbook and your accommodation policy, which are the same as from 2008. Are those policies still the same today?
>
> **A.   They probably do not read exactly the same as from 2008 because, one, we've had difference presidents. So, it's gonna be signed by different individuals. And there may have been language that was added or changed.**
>
> **Unless I'm looking at the policy from 2008 and the policy from today, I don't know that they're gonna be exactly the same, but would cover the same content.**
>
> Q.   Okay. And are you aware of any kind of -- from the perspective of your job and your title is there any kind of changes with regard to the accommodation policy?
>
> We'll start with that. Well, actually, we'll start with the procedures for reporting disability that would be different from 2008 to today.
>
> **A.   No. I'm not aware of any significant changes.**
>
> Q.   Okay. And with regard to Holland's accommodation policy, are you aware of any kind of -- and we'll go with your language -- significant changes from 2008 to today?
>
> **A.   Again, there's not a written policy for accommodations. They are handled as they're brought to the company's attention.**

14

Q. And that is -- just so I can clarify, that's the same policy as what you had in 2008?

**A. Correct.**

[DE 39-3 at 4.] Next, Mr. Powers cites the deposition of Mr. Kopczynski for the proposition that

"Holland's policy for considering accommodation of a disability remains the same." [DE 38 at

3.] The cited portion of that deposition states:

Q. Is there any kind of changes to the unwritten policy regarding accommodation that have changed since 2008?

**A. No, not that I'm aware of.**

Q. And I don't want to go all the way through what it is. But, essentially, the accommodation process starts on a case-by-case basis on the local level; is that correct?

**A. Any request for accommodation, I would have to defer and send up to our HR Department.**

Q. Okay, so any request for accommodation now goes to the HR Department?

**A. Yes.**

Q. Is there any request for accommodation that you feel that you can handle on a local level?

**A. I would ask for counsel.**

Q. Okay.

**A. From HR.**

Q. Has that changed since 2008?

**A. No.**

Q. That was also true in 2008?

**A. Yes.**

[DE 39-4 at 11 (objections omitted).]

Giving Mr. Powers the benefit of all reasonable inferences, the cited testimony may provide sufficient evidence to show that Holland had not formally changed its unwritten 100% healed policy. But the Court does not find that a reasonable jury could find in favor Mr. Powers simply because Holland *had* a 100% healed policy. Instead, Mr. Powers would need to provide evidence that Holland *applied* a 100% healed policy during the time at issue in this lawsuit. *See Powers*, 667 F.3d at 823 n.8 ("Powers presented sufficient evidence that Holland *applied* a 100% healed policy") (emphasis added); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 647 (6th Cir. 2001) ("Ardco's '100% healed rule' appears to have been well-known and consistently applied, at least with regard to lifting restrictions, and is assumed to exist for purposes of summary judgment."); *E.E.O.C. v. United Parcel Serv., Inc.*, No. 09 C 5291, 2014 WL 538577, at *2 (N.D. Ill. Feb. 11, 2014) ("The Seventh Circuit has held that, when *applied* to a qualified individual with a disability, a 100% healed policy is *per se* impermissible.") (first emphasis added).

In order to survive summary judgment, Mr. Powers must be able to provide sufficient evidence for a jury to return a verdict for him on the question of *per se* discrimination. *Anderson*, 477 U.S. at 249. That evidence must—at bare minimum—provide some showing that Holland *applied* a 100% healed policy during 2010–11. He has failed to provide any such evidence. Moreover, Mr. Powers is not entitled to an inference that simply having an unwritten policy means it was applied in his case, since such an inference would not be a reasonable one in light of the evidence in the record. Rather, the evidence supplied by the parties (even viewed in the light most favorable to Mr. Powers) supports that Holland was still in the process of collecting medical information from Mr. Powers regarding his limitations and that therefore the process had

not advanced to a point where Holland could be said to have implemented any "100% healed policy." Accordingly, summary judgment will be granted on the claim of *per se* discrimination.

### 3. Disability Discrimination

Next, the Court turns to Mr. Powers' claims of disability discrimination. Discrimination under the ADA can be proved either directly or indirectly. *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014). Mr. Powers attempts to proceed under both theories. In order to prove discrimination using the "direct method" of proof, Mr. Powers must prove: (1) he is disabled within the meaning of the ADA, as amended by the ADAAA; (2) he is qualified to perform the essential functions of the job with or without accommodation; and (3) he has suffered an adverse employment action because of his disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). To prove a claim using the "indirect method" of proof, he must prove: (1) he was a qualified individual with a disability within the meaning of the ADA; (2) he was meeting his employer's legitimate expectations; (3) he nevertheless suffered an adverse employment action; and (4) similarly-situated, non-disabled employees were treated more favorably. *Taylor-Novotny*, 772 F.3d at 488. The last element may also be satisfied by other "circumstances [that] suggest that the plaintiff's disability was the reason the employer took [the] adverse action." *Id.* at 488 n.45 (quoting *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1127–28 (7th Cir. 2006)).

The Defendants argue that Mr. Powers has failed to provide sufficient *prima facie* evidence that ties the employment action to an allegedly discriminatory intent under either method of proof. The Court agrees.

Starting with the indirect method of proof, Mr. Powers entirely ignores his obligation to provide *prima facie* evidence that the Defendant's actions were undertaken due to his alleged

disability. He provides neither evidence of any similarly situated employees nor any argument that other circumstances satisfy his obligation of offering indirect proof. Accordingly, he cannot proceed under the indirect method. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 841 (7th Cir. 2012) ("Hoppe neither alleged nor provided evidence of any similarly situated employees not subjected to the same adverse action, so she may only proceed under the direct method of proof.").

With respect to the direct method of proof, Mr. Powers does not have direct evidence of discrimination, such as an admission of discriminatory intent. He therefore attempts to state a circumstantial case based on his allegations that the Defendants applied a 100% healed policy and that there was a breakdown in the interactive process, which Mr. Powers attributes to the defendants. [DE 38 at 22–23.] However, the Court has already determined that Mr. Powers has provided no evidence that the Defendants applied a 100% healed policy during the time relevant to this lawsuit. Therefore, whether Mr. Powers has provided sufficient *prima facie* evidence of discriminatory intent depends on his allegations of the breakdown in the interactive process.

As an initial aside, in their reply brief the Defendants argue that these allegations should be viewed solely as a restatement of Mr. Powers's failure to accommodate claim, rather than a separate disparate treatment claim, since Mr. Powers does not identify any adverse action other than the breakdown of the interactive process. [DE 42 at 11.] In support, they cite *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001), without any further argument or explanation. The Court declines to consider this argument, which was made for the first time in their reply brief. *See E.E.O.C. v. Caterpillar, Inc.*, 503 F. Supp. 2d 995, 1048 (N.D. Ill. 2007) ("because the Defendant raises this specific argument for the first time in its reply, the court declines to consider it"). Moreover, *Tyler* does not address the question of whether the breakdown in an interactive process can ever constitute evidence in support of a discrimination claim; the Seventh

Circuit merely held (with respect to the discrimination claim) that there was no adverse employment action, since the plaintiff retained the same pay and benefits after his transfer between plants. If anything, the Seventh Circuit's willingness to address the merits of the discrimination claim in *Tyler* undercuts the argument that a breakdown in the interactive process cannot support a distinct discrimination claim.

Regardless, the Court does agree with the Defendants that Mr. Powers has not provided any evidence of a causal connection between the breakdown of the interactive process and any discriminatory intent. Defendants argue: "Powers cites to no evidence establishing that his failure to return to work was directly caused by Holland's intent to discriminate against him due to his alleged disability. Nor does he provide any circumstantial evidence (suspicious timing, ambiguous statements, similarly situated employees who were treated more favorably, or evidence of pretext) that would allow a trier of fact to infer a discriminatory intent on Holland's part." [DE 42 at 12.] The Court agrees that Mr. Power has provided no such evidence. Once his allegations of a 100% healed policy fall away, he essentially asks the Court to assume that because the interactive process broke down, it was because of discriminatory intent. This would read out of the statute the requirement that the discrimination be "on the basis of disability." 42 U.S.C. § 12112; *see also Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994) (considering claim under the Pregnancy Discrimination Act, with causation requirement similar to ADA; "The plaintiff has made no effort to show that if all the pertinent facts were as they are except for the facts of her pregnancy, she would not have been fired. So in the end she has no evidence from which a rational trier of fact could infer that she was a victim of pregnancy discrimination.").

Defendants also argue that Mr. Powers cannot establish that Holland's legitimate, non-discriminatory reason for its actions is pretextual. However, in light of the lack of *prima facie* evidence the Court need not reach any issues that would be addressed after burden shifting. Summary judgment on the discrimination claim is granted.

### 4. Failure to Accommodate

Next, Mr. Powers brings a failure to accommodate claim. In order to establish such a claim, he must show that: "(1) he is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Bunn*, 753 F.3d at 682 (citing *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)).

When an employee asks for an accommodation because of a disability, an employer "must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014) (quoting *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996)). The process brings the employee and employer together in a "flexible" process to "identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (quoting *Hendricks-Robinson*, 154 F.3d at 693). In that interactive process, both parties "are responsible for determining what accommodations are needed." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701–02 (7th Cir. 2014).

"If [the interactive] process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013). "Where the employee does not

provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Id.* (citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). However, an employer's failure to engage in the interactive process is actionable "if it prevents identification of an appropriate accommodation for a qualified individual." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014).

The parties generally agree that there was a breakdown in the interactive process in this case, the result of which was that Mr. Powers's request for accommodation was never fully considered. They disagree, however, regarding who is to blame for that breakdown. In light of the disagreement and evidence presented, the Court finds there to be a material fact in genuine dispute regarding who is to blame for the breakdown in the interactive process, precluding summary judgment at this time.

Defendants argue that Mr. Powers's initial statements regarding his limitations were confusing and that Holland attempted to communicate with Mr. Powers to clarify these restrictions. This included several letters and emails, some to Mr. Powers and some to his counsel, as well as a voicemail left for Mr. Powers's counsel. Holland characterizes Mr. Powers's responses as a failure to provide clarification. At other times, they argue that Mr. Powers ignored inquiries from Holland, in essence abandoning the interactive process.

Mr. Powers responds that it was Holland's actions that broke down the interactive process. He disputes whether the materials he submitted were confusing and states that "[a] month or two after submitting his board transfer form to Holland [in February 2011], Powers called Holland to inquire about the status of his return to work, and was informed that Holland would get back to him." [DE 38 at 6.]

21

In light of these conflicting facts, and giving Mr. Powers the benefit of all reasonable inferences—as the Court must on summary judgment—no conclusion can be reached regarding which party is to blame for the breakdown of the interactive process. If Defendants' evidence is to be credited, counsel for Holland communicated with counsel for Mr. Powers on March 10 and 11, but heard no response until the filing of the EEOC complaint. If Mr. Powers's evidence is to be credited, he made a phone call to Holland sometime after the March communication, and was told that Holland "would get back to him." [DE 38 at 6.] The inference is that they never did. What is clear is that some party reached out to the other to continue the discussion, but that invitation went unanswered. And while the "last act in the interactive process is not always the cause of a breakdown," *Sears*, 417 F.3d at 806, in this case there appears to be no other conclusion that could be reached.

This genuine dispute as to a material fact precludes summary judgment on Mr. Powers's claim of failure to accommodate. The motion, as to that claim, is therefore denied.

### 5.     Retaliation

Finally, Mr. Powers claims that the Defendants retaliated against him for having filed his initial lawsuit.  The complaint states two separate claims for retaliation: one under the ADA and one under Title VII, but Mr. Powers does not ever mention Title VII in his response to the summary judgment motion. Like several of his other claims, Mr. Powers may proceed on a retaliation claim under the direct or indirect method of proof. *Cloe*, 712 F.3d at 1180. He chooses to proceed only under the direct method. [DE 38 at 15.] To proceed under that method, Mr. Powers must show that "(1) [he] engaged in a statutorily protected activity; (2) [he] suffered an adverse action; and (3) there is a causal connection between the two." *Cloe*, 712 F.3d at 1180.

Defendants raise several arguments in support of their motion for summary judgment on this claim, but the Court need only address one of them as it is fully dispositive. Specifically, and similar to the arguments raised with respect to Mr. Powers's discrimination claim, Defendants argue that Mr. Powers "provides no evidentiary support for any link between his failure to return to work and his allegations of adverse employment actions." [DE 42 at 15 (emphasis omitted).] The Court agrees.

"To show causation under the direct method, an employee must show that [his] protected activity was a 'substantial or motivating factor' behind the adverse employment action." *Taylor-Novotny*, 772 F.3d at 495. That burden can be met "by presenting either a direct admission of a retaliatory motive or a 'convincing mosaic' of circumstantial evidence support an inference that a retaliatory animus was at work." *Id.* The Seventh Circuit has identified three general categories of circumstantial evidence that might support that "convincing mosaic": "(1) suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (internal quotation marks omitted).

Mr. Powers totally ignores his *prima facie* duty to create the "convincing mosaic" of circumstantial evidence needed on the question of causation. As with his discrimination claim, Mr. Powers argues that retaliation is proven by virtue of the breakdown in the interactive process. However, he offers no evidence—and not even any argument in his response to the summary judgment motion—that there was a causal connection between the breakdown and his protected activities. [DE 38 at 15–16.] Given that Mr. Powers does not even attempt to establish

23

that there is sufficient evidence of causation to send the claim to a jury, summary judgment is appropriate on his retaliation claim.

### IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. [DE 32.] The Clerk is **DIRECTED** to enter judgment against Plaintiff Keith Powers on his claims of *per se* discrimination, disability discrimination, and retaliation. Mr. Powers's claim of failure to accommodate survives for trial. The Court will contact the parties to schedule a status conference to set a trial date.

SO ORDERED.

ENTERED:  March 30, 2015

                        /s/ JON E. DEGUILIO
Judge
United States District Court